# IN THE SUPREME COURT OF TEXAS

No. 13-0537

IN RE STATE BOARD FOR EDUCATOR CERTIFICATION, RELATOR

ON PETITION FOR WRIT OF MANDAMUS

**Argued October 14, 2014**

JUSTICE WILLETT delivered the opinion of the Court.

JUSTICE GUZMAN filed a concurring opinion, in which JUSTICE BROWN joined.

This mandamus action poses one procedural question: Does a trial court have discretion to deny suspension of a non-money judgment when the State files a notice of appeal?

Here, a schoolteacher sought judicial review of the State Board for Educator Certification's revocation of his teaching certificate. The trial court reversed the revocation and refused to allow the Board to supersede the judgment pending appeal. Importantly, the merits of the underlying appeal are not before us; they remain pending in the court of appeals. We deal solely with the State's request for a writ of mandamus directing the trial court to supersede its judgment.

Untangling the various rules applicable to appellants generally and to government appellants specifically, we hold that a trial court has discretion to deny any party—even the State—the right to supersede a non-money, non-property judgment. Put in practical terms, a trial court has discretion to prevent the Board from re-revoking a teacher's professional license while the Board appeals, for however long, the court's rejection of the Board's initial revocation.

Government's right to supersede a judgment may be automatic, but it is not absolute. We deny relief.

# I. Background

In 2011, the Board initiated administrative proceedings to revoke Erasmo Montalvo's teaching certificate over allegations of improper educator-student contact. An administrative law judge weighed the evidence and determined no discipline was warranted. The Board adopted the ALJ's findings of fact, but concluded the ALJ "failed to appropriately interpret and apply [the Board's] policies and rules." Believing Montalvo was "unworthy to instruct or supervise the youth of this state,"[1] the Board revoked his educator certificate.

Montalvo sued to overturn the revocation,[2] and the trial court agreed, concluding the Board's decision was not supported by substantial evidence and was arbitrary and capricious. The trial court issued a permanent injunction prohibiting the Board from "treating as revoked or revoking" Montalvo's certification. Montalvo posted security with the trial court, prompting the court to order, "pursuant to Rule 24.2(a)(3) of the Texas Rules of Appellate Procedure, that any appeal taken of this Judgment . . . will not supersede this Judgment during the pendency of such appeal." In other words, the Board could not revoke Montalvo's professional certification, thus depriving him of his livelihood, during the potentially years-long pendency of the appeal.

The Board appealed the trial court's revocation reversal and separately sought mandamus relief challenging the trial court's denial of supersedeas. The court of appeals denied mandamus

---

[1] *See* TEX. EDUC. CODE § 21.041(b)(7) ("The board shall propose rules that . . . provide for disciplinary proceedings, including the . . . revocation of an educator certificate . . . ."); 19 TEX. ADMIN. CODE § 247.2(1)(J) (2010) (State Bd. for Educator Certification, Code of Ethics & Standard Practices) ("The educator shall be of good moral character and be worthy to instruct or supervise the youth of this state."); *id.* §§ 249.15(a)(4); 249.15(b)(2) (2013) (State Bd. for Educator Certification, Disciplinary Action) (allowing the Board to "revoke . . . a certificate" upon a showing of "satisfactory evidence that . . . the [educator] is unworthy to instruct or to supervise the youth of this state.").

[2] *See, e.g.*, TEX. GOV'T CODE § 2001.171 ("A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter."); 19 TEX. ADMIN. CODE § 249.40(c) (2011) (State Bd. for Educator Certification, Appeals) ("Appeals from a final order of the [Board] shall be under the substantial evidence standard of review and governed by the Texas Government Code, Chapter 2001; applicable case law; and this section.").

relief,[3] and it abated the merits of the Board's appeal pending our resolution of the narrow procedural issue: whether the trial court had discretion to deny suspension of its judgment.

## II. Discussion

The relevant rules include:

1. Texas Rule of Appellate Procedure (TRAP) 24.1(a): A judgment debtor can supersede enforcement of an adverse judgment by posting security with the trial court.[4]

2. Civil Practice and Remedies Code (CPRC) section 6.001: Governmental entities, like the Board, are exempt from bond requirements.[5]

3. TRAP 24.2(a)(3): When, as here, the judgment is not for money or property, the judgment creditor can post security that gives the trial court discretion to "decline to permit the judgment to be superseded."[6]

4. TRAP 25.1(h): Enforcement of a judgment can proceed unless the judgment is suspended under TRAP 24, or "the appellant is entitled to supersede the judgment without security by filing a notice of appeal."[7]

Since 1838, the State and its departments have been exempt from filing a bond to appeal an adverse judgment.[8] Our rules have long recognized this,[9] and CPRC section 6.001 codifies it:

---

[3] 411 S.W.3d 576.

[4] TEX. R. APP. P. 24.1(a).

[5] TEX. CIV. PRAC. & REM. CODE § 6.001. Montalvo does not dispute that the Board is a governmental entity for purposes of section 6.001.

[6] TEX. R. APP. P. 24.2(a)(3).

[7] *Id.* at 25.1(h)(1)–(2).

[8] *See* Act approved May 3, 1838, 2d Cong., 2d R.S., § 2, 1838 Repub. Tex. laws 2, *reprinted in* 1 H.P.N. Gammel, *The Laws of Texas 1822–97*, at 1472 (Austin, Gammel Book Co. 1898).

[9] *See, e.g.*, former TEX. R. CIV. P. 354 (1941) ("[T]he following parties are not required to execute a cost bond when appealing in their official capacity: The State of Texas . . . Any State Department . . . Any County of Texas . . . .").

"A governmental entity . . . may not be required to file a bond . . . for an appeal . . . in a civil suit."[10] In effect, the State's notice of appeal *automatically* suspends enforcement of a judgment. But that doesn't necessarily mean governmental entities have an *absolute* right to automatic supersedeas, which is where TRAP 24.2(a)(3)—applicable where "the judgment is for something other than money"—enters into our analysis.[11]

How do these rules interact? Specifically, what happens to the Board's entitlement to automatic suspension of an adverse judgment (triggered by filing its notice of appeal) if Montalvo posts security? The Board insists that CPRC section 6.001 and TRAP 25.1 control, and that TRAP 24.2 is inapplicable against governmental entities. Montalvo counters that TRAP 24.2(a)(3) tempers TRAP 25.1(h), and plainly empowers trial courts to deny suspension of non-money judgments.

This is our first opportunity to squarely address which rule trumps. Is the Board still entitled to an automatic right to supersedeas? Or does the trial court retain discretion—in effect, "superdupersedeas"—to deny it?

\*   \*   \*

We addressed the State's right to suspend a trial-court judgment during appeal 50 years ago in *Ammex Warehouse Co. v. Archer*.[12] In that case, relators argued they were exempt from

---

[10] TEX. CIV. PRAC. & REM. CODE § 6.001(a). The text of the statute limits its definition of governmental entity to "this state", or "a department of this state", and a few other entities or officials. *Id*. § 6.001(b).

[11] *See* TEX. R. APP. P. 24.2(a)(3) ("Other Judgment. When the judgment is for something other than money or an interest in property, the trial court must set the amount and type of security that the judgment debtor must post. The security must adequately protect the judgment creditor against loss or damage that the appeal might cause. But the trial court may decline to permit the judgment to be superseded if the judgment creditor posts security ordered by the trial court in an amount and type that will secure the judgment debtor against any loss or damage caused by the relief granted the judgment creditor if an appellate court determines, on final disposition, that that relief was improper.").

[12] 381 S.W.2d 478, 480–81 (Tex. 1964).

state regulation covering whiskey and other liquor sales.[13] The trial court had permanently enjoined the Texas Liquor Control Board from enforcing or attempting to enforce state liquor laws against the relators pending appeal.[14] But the court of appeals issued a writ forbidding enforcement of the trial court's order, deeming it interference with the appellate court's own jurisdiction over the case.[15] We observed, "it is readily seen that the purpose of the temporary order was to prevent supersedeas and restrain enforcement" of state liquor laws pending appeal.[16]

*Ammex* involved provisions predating CPRC section 6.001, but the case is illustrative.[17] In *Ammex,* we noted the Legislature "was well within its constitutional boundaries" in exempting the State from giving bond to suspend enforcement of a trial-court judgment pending appeal.[18] Specifically, we held, "The State has a valid statutory right to a supersedeas without filing a bond upon perfecting its appeal by giving proper notice. Unless a contrary intention is made known to the Court, the State's notice of appeal operates as a supersedeas."[19] *Ammex* plainly recognized the

---

[13] *Id*. at 479. Relators relied on a then-recent case of the United States Supreme Court, *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, which held that a state cannot regulate or control the passage of duty-free liquor for export sold to departing international airline travelers through the state's territory because such a situation does not involve the unlawful diversion or use of alcoholic beverages within the state. 377 U.S. 324, 333 (1964). That is, the state sought to prevent transactions authorized by Congress under its constitutional power to regulate commerce with foreign nations, which the Supreme Court held the state could not do. *Id*. at 333–34.

[14] *Ammex*, 381 S.W.2d at 479.

[15] *Id*. at 480.

[16] *Id*. at 479–80.

[17] *See id*. at 480–82 (discussing the statutes—Articles 279a and 2276—that preceded CPRC section 6.001).

[18] *Id*. at 482.

[19] *Id*. at 485.

State's right to supersedeas upon filing a notice of appeal,[20] and that power, also reflected today in TRAP 25.1(h), is undisputed. But is it unlimited?

Since *Ammex*, we have twice indicated that trial courts have discretion to prevent the State's automatic suspension of an adverse non-money judgment. First was our 1998 decision *In re Dallas Area Rapid Transit*,[21] which examined whether, under TRAP 24.2(a)(3)'s predecessor,[22] a governmental body ordered to produce information under the Public Information Act[23] was

---

[20] Some courts of appeals have interpreted this right to be absolute. *See, e.g.*, *Cascos v. Cameron Cnty. Attorney*, 319 S.W.3d 205, 217 (Tex. App.—Corpus Christi 2010, no pet.) ("[B]ecause the case law is clear that a governmental entity, such as a County, has the absolute right to supersede a judgment of the trial court by merely filing a notice of appeal, and because this absolute right extends to governmental officials, we conclude that the trial court did not have discretion to deny supersedeas of the judgment against appellants."); *City of Fort Worth v. Johnson*, 71 S.W.3d 470, 473 (Tex. App.—Waco 2002, no pet.) (per curiam) (holding that the district court has no discretion to deny a government appellant supersedeas).

[21] 967 S.W.2d 358 (Tex. 1998) (per curiam) (hereinafter *DART*).

[22] The rule giving courts discretion to deny supersedeas was first codified in 1984 when we amended Texas Rule of Civil Procedure (TRCP) 364. *See* order of Dec. 5, 1983, eff. April 1, 1984. As amended, TRCP 364 stated in part, "[T]he court may decline to permit the judgment to be suspended on filing by the plaintiff of a bond or deposit to be fixed by the court in such an amount as will secure the defendant in any loss or damage occasioned by any relief granted if it is determined on final disposition that such relief was improper." TEX. R. CIV. P. 364(f) (1984), *repealed by* order of April 10,1986, eff. Sept. 1, 1986. Our first and only cite to TRCP 364(f) while it was in force came in *Hill v. Fourteenth Court of Appeals*. 695 S.W.2d 554, 555 (Tex. 1985) (refusing to hold that supersedeas is a matter of right in election contests and recognizing the trial court's discretion to deny supersedeas of a non-money, non-property judgment under TRCP 364(f)).

In 1986, we recodified the trial court's discretion in TRAP 47(f), which provided, "[T]he trial court may decline to permit the judgment to be suspended on filing by the judgment creditor of security to be ordered by the trial court in such an amount as will secure the judgment debtor in any loss or damage caused by any relief granted if it is determined on final disposition that such relief was improper." TEX. R. APP. P. 47(f) (1986) (recodified as TRAP 24.2(a)(3), eff. Sept. 1, 1997). In *Klein Independent School District v. Fourteenth Court of Appeals*, we noted that the purpose of TRAP 47(f) was "to permit a trial court to deny supersedeas of an injunction, conditioned upon the setting of a bond sufficient to protect the appealing party's interests." 720 S.W.2d 87, 88 (Tex. 1986) (citing *Hill*, 695 S.W.2d at 555). We didn't address TRAP 47(f) again until *DART*, 967 S.W.2d at 359–60 (noting that TRAP 47(f) was in effect when the case was before the trial court but that TRAP 24.2(a)(3) had since become effective by the time the case reached our Court).

Finally in 1997, we again recodified TRAP 47(f), which became TRAP 24.2(a)(3). The text of TRAP 24.2(a)(3) remains unchanged from TRAP 47(f).

[23] TEX. GOV'T CODE §§ 552.001–.353.

entitled to suspend the trial-court order requiring production.[24] We said yes,[25] troubled that the trial court's refusal to stay its judgment effectively denied DART any appeal whatsoever, "for once the requested information is produced, an appeal is moot"—a result "the rule does not permit."[26]

We observed, though, that while trial courts lack *limitless* discretion to deny the State supersedeas, they *do* have "a measure of discretion" in appropriate circumstances.[27] In fact, we directed the trial court to stay its judgment requiring production "unless the court determines that the *News* should be permitted to post the security required by TRAP 24.2(a)(3)"[28]—just as Montalvo did in today's case. The Court was careful to note that whether that specific determination would be an *abuse* of discretion "is not an issue before us,"[29] but we were united that such discretion existed in the first place.

We said the same thing a year later in *In re Long*.[30] In *Long*, the Dallas County District Clerk sought relief from a judgment of contempt for violating an injunction.[31] While noting that the Clerk's "notice of appeal operates as a supersedeas bond,"[32] we observed that the opposing

---

[24] *DART*, 967 S.W.2d at 359.

[25] *Id.*

[26] *Id.* at 360.

[27] *Id.*

[28] *Id.* Although TRAP 47(f) was still in effect while the case was pending in the trial court, by the time the case arrived at our door, we had completed the 1997 re-write of the rules, which renumbered TRAP 47(f) to TRAP 24.2(a)(3).

[29] *Id.*

[30] 984 S.W.2d 623 (Tex. 1999) (per curiam).

[31] *Id.* at 624.

[32] *Id.* at 625 (citing *Ammex*, 381 S.W.2d at 485; TEX. CIV. PRAC. & REM. CODE § 6.001(b)(4)).

party "could have sought denial of suspension of the injunction" under TRAP 24.2(a)(3).[33] But he failed to do so, unlike Montalvo in today's case.

Importantly, both *DART* and *Long* were per curiam opinions decided shortly after the Court adopted modern TRAP 24.2(a)(3) in 1997. And while neither case involved an appellee that had in fact posted security to thwart a government appellant's supersedeas, the Court plainly saw TRAP 24.2(a)(3) as a mechanism for avoiding automatic suspension of a non-money judgment.[34] Both cases accept as given that trial courts have discretion to deny supersedeas to a governmental appellant.[35] And this understanding, coming on the heels of the Court's adoption of TRAP 24.2(a)(3), is also the settled understanding of leading commentators on Texas civil procedure, who agree the rule confers trial-court discretion that may be used against the State.[36]

---

[33] *Id.* at 626.

[34] In the only other case raising this similar issue, the parties reached a settlement before we could address the issue. *See In re Bass*, No. 11-0245, 55 Tex. Sup. Ct. J. 568 (Apr. 16, 2012) (pet. dism'd).

[35] *See Long*, 984 S.W.2d at 626; *DART*, 967 S.W.2d at 360 ("However, [TRAP] 47 would have allowed the district court to determine whether [the plaintiff] could avoid supersedeas by posting security protecting DART from the loss or damage caused by an erroneous ruling.").

[36] *See, e.g.*, 10 William V. Dorsaneo, III et al., *Texas Litigation Guide* §§ 148.03–.04 (2014); Alessandra Ziek Beavers and Michol O'Connor, *O'Connor's Texas Civil Appeals* § 5.2 (2014); 4 Tex. Jur. 3d, *Appellate Review* § 292 (2008).

Our holding today is also consistent with the corollary federal rules, which excuse the federal government from the bond requirement, but indicate, for trial courts, that a stay pending appeal is not automatic, and that appellate courts have near-unlimited authority to grant a stay—or not.

Federal Rule of Civil Procedure (FRCP) 62, the counterpart to our state rules, lays out the process for obtaining in the district court a stay of execution on the judgment pending appeal. Specifically, the rule allows appeals on behalf of the United States government to proceed without a supersedeas bond. FED. R. CIV. P. 62(e) ("The court must not require a bond, obligation, or other security . . . when granting a stay on an appeal by the United States."). Some courts have read FRCP 62(e) in tandem with FRCP 62(d), and determined that the United States is entitled to a stay of execution without bond or other security as a matter of right. *See Hoban v. Wash. Metro. Area Transit Auth.*, 841 F.2d 1157 (D.C. Cir. 1988) (per curiam) (applying FRCP 62(f), which incorporated state law entitling the governmental entity to supersedeas as a matter of right); *In re Rape*, 100 B.R. 288 (Bankr. W.D.N.C. 1993) (holding United States entitled to supersedeas as a matter of right). Other courts disagree, however, holding that the government still must show that a stay is appropriate. *See In re Westwood Plaza Apartments*, 150 B.R. 163, 165–68 (Bankr. E.D. Tex. 1993) (holding that FRCP 62(e) is separate and independent from FRCP 62(d) and, thus, the United States is not entitled to supersedeas as a matter of right); *C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co.*, 750 F. Supp. 67, 72–76 (E.D.N.Y. 1990) (noting that the government was not entitled to supersedeas as a matter of right because the judgment

8

Today the question is squarely presented: Does TRAP 25.1(h) remove the trial court's discretion to deny supersedeas under TRAP 24.2(a)(3)? In arguing yes, the Board discusses only part of the rule. The Board relies heavily on TRAP 25.1(h)'s statement that enforcement may proceed "unless . . . the appellant is entitled to supersede the judgment without security by filing a notice of appeal." The Board insists this right to automatic suspension is absolute. But that provision cannot bear the weight the Board places on it. That language merely acknowledges what we have long known, that the State's notice of appeal automatically supersedes a final judgment. It doesn't eviscerate a trial court's discretion under TRAP 24.2(a)(3) to decline supersedeas if the judgment creditor posts security.[37]

We see no merit in the Board's argument that its right to supersedeas removes a trial court's discretion to enforce its non-money judgments against the State pending appeal. CPRC section 6.001 simply restates settled law that the State may appeal without filing a bond. Neither it nor TRAP 25.1(h) confers unfettered power to force suspension of the judgment. The Board may

---

was not stayed under any other subdivisions of FRCP 62, which is required under FRCP 62(e)). But FRCP 62(c) reveals, in any event, that a district court maintains discretion to suspend an injunction pending appeal. FED. R. CIV. P. 62(c) ("the court *may* suspend . . . an injunction on terms for bond"). So, even though some federal courts disagree whether the United States government is entitled to a stay as a matter of right, FRCP 62(c) seems to plainly vest discretion in the district court when the appeal involves an injunction. Our supersedeas rules similarly discriminate between different types of judgments: money judgments, TEX. R. APP. P. 24.2(a)(1), property judgments, *id.* at 24.2(a)(2), and those for other types of relief, *id.* at 24.2(a)(3)—*i.e.*, injunctions. This last rule is the only one of the three that expressly affords discretion to the trial court to deny supersedeas.

Federal Rule of Appellate Procedure (FRAP) 8 provides the process for obtaining a stay in the appellate courts. It notes that the initial motion to stay must ordinarily be presented to the district court, FED. R. APP. P. 8(a)(1), but if it would be impracticable or if the district court already denied the motion or failed to afford the relief requested, the party may move to stay in the appellate court, *id.* at 8(a)(2). Unfortunately, neither FRCP 62 nor FRAP 8 expressly mentions whether the United States government is entitled to a stay as a matter of right. In fact, FRAP 8 includes no mandatory language directing the appellate courts to grant a stay in any civil case, suggesting the appellate court has unlimited discretion.

[37] We need not consider whether the trial court abused its discretion under TRAP 24.2(a)(3), because neither the Board nor Montalvo raised that argument in this Court. *See* TEX. R. APP. P. 52.3(f).

appeal without security—this is undisputed—but it has no unqualified right to supersedeas in light of the trial court's discretion under TRAP 24.

One final point: The State's position—boundless entitlement to supersede adverse non-money judgments—would vest unchecked power in the executive branch, at considerable expense to the judicial branch, not to mention the wider public we both serve. The Texas Constitution divides governing power among three branches, and power seized by one branch necessarily means power ceded by another. Our State Constitution, like Madison's Federal handiwork,[38] is infused with Newtonian genius: three rival branches locked in synchronous orbit by competing interests—ambition checking ambition.[39] These are abstract principles, but they have real-world ripple effects on the lives of everyday Texans. This case is Exhibit A. TRAP 24.2(a)(3) gives the trial court discretion, quite sensibly, to prevent the State from re-revoking Montalvo's certification—the ultimate professional sanction—while it spends years appealing the court's reversal of the State's first revocation, something the trial court found "arbitrary and capricious." The State—as yet unsupported by a victory on the merits in any court—wants to strip Montalvo of his livelihood while the appellate process grinds on, and if he manages to regain his professional license after having been kicked out of his profession for years—well, bygones. That's a striking assertion of unbridled executive power—to enforce administrative orders that a trial court has reversed—and TRAP 24.2(a)(3) recognizes the judiciary's authority to say no.

---

[38] James Madison, the Father of the Federal Constitution, turned 85 the day the Republic of Texas adopted its Constitution. He lived barely 100 days more, long enough to see Texas free.

[39] In fact, the Texas Constitution takes Madison a step further by including, unlike the Federal Constitution, an explicit Separation of Powers provision to curb overreaching and to spur rival branches to guard their prerogatives. TEX. CONST. art. 2, § 1.

### III. Conclusion

This case does not delve into the underlying merits, which remain at the court of appeals. The issue presented is innately and exclusively procedural: Do governmental entities have an absolute, overriding right to supersedeas that nullifies trial-court discretion? We answer no. A governmental entity's notice of appeal does not deprive a trial court of discretion to refuse suspension of its judgment if the appellee posts security in accordance with TRAP 24.2(a)(3). Accordingly, we deny the Board's petition for writ of mandamus.

_____
Don R. Willett
Justice

**OPINION DELIVERED:** December 19, 2014